## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| DeANTHONY THOMAS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  04-CV-6098-HFS |
| | ) | |
| U.S. BANK N.A., N.D., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' SUGGESTIONS IN OPPOSITION
## TO PLAINTIFFS' MOTION TO REMAND

/s/ Mark A. Olthoff
RUSSELL S. JONES, JR.          #30814
MARK A. OLTHOFF                #38572
LOGAN W. OVERMAN               #55002
Shughart Thomson & Kilroy, P.C.
Twelve Wyandotte Plaza
120 W. 12th Street
Kansas City, Missouri  64105
(816) 421-3355
(816) 374-0509 (FAX)

ATTORNEYS FOR DEFENDANTS
U.S. BANK NATIONAL ASSOCIATION
AND U.S. BANK NATIONAL
ASSOCIATION ND

# TABLE OF CONTENTS

I. Introduction .................................................................................................................1

II. Plaintiffs' Motion to Remand Should Be Denied ...................................................3

    A.  This Action Was Properly Removed Because Federal Jurisdiction Exists Under DIDA and the NBA and Plaintiffs' Artful Pleading Belies the Federal Nature of Their Claims ...................................................................................3

    B.  DIDA, Specifically 12 U.S.C. § 1831d, and NBA, 12 U.S.C. §§ 85, 86, Make Clear that There Can Be No State Law Claim Against FirstPlus Bank or its Assignees .....................................................................................................6

        1.  FirstPlus Bank and the National Banks have most favored lender preemption authority ...........................................................................6

        2.  The broad definition of "interest" extends to origination fees ...............8

    C.  Because Plaintiffs' Excessive Fee Claim is Subsumed Within the Broad Federal Definition of Interest, Plaintiffs' Claim is Preempted. ..................................12

    D.  U.S. Bank and U.S. Bank ND Are Entitled to Removal and Preemption Regardless Of Whether They Originated Loans, Because Plaintiffs Claim They Are Collecting or Receiving Illegal Interest ...........................................14

    E.  Recent OCC Regulations Demonstrate that Preemption is Proper. ...........................19

    F.  The Remedy Plaintiffs Seek Reveals the True Nature of Their Claim. .....................22

    G.  Plaintiffs' Request for Attorneys' Fees is Without Merit. ...........................................23

III. Conclusion ...............................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

*American Timber & Trading Co. v. First National Bank*, 690 F.2d 781 (9th Cir. 1982).............10

*Avery Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968)…………………………….............4

*Bank of America v. City & County of San Francisco*, 309 F.3d 551 (9th Cir. 2002).....................6

*Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25 (1996).....................................6, 20

*Bastien v. AT&T Wireless Svs., Inc.*, 205 F.3d 983 (7th Cir. 2000) ................................12

*Beneficial National Bank v. Anderson*, 123 S.Ct. 2058 (2003) ............................................ passim

*Cavallini v. State Farm Mut. Ins. Co.,* 44 F.3d 256 (5th Cir. 1995)................................12

*Conference of State Bank Sup'rs v. Conover*, 710 F.2d 878 (D.C. Cir. 1983) .............................19

*Cronkleton v. Hall*, 66 F.2d 384 (8th Cir. 1933).............................................................10

*Fidelity Fed. Sav. & Loan v. de la Cuesta*, 458 U.S. 141 (1982) ................................. 18

*Daniel v. First National Bank*, 227 F.2d 353 (5th Cir. 1955).........................................16

*Davis v. Elmire Sav. Banks*, 161 U.S. 275 (1896) .......................................................6

*Doe v. Norwest Bank Minnesota, NA*, 107 F.3d 1297 (8th Cir. 1997)...........................11

*Evans v. National Bank of Savannah*, 251 U.S. 108 (1919) ...........................................8

*Federal Deposit Ins. Corp. v. Lattimore Land Corp.*, 656 F.2d 139 (5th Cir. 1981) ..............17, 18

*Fisher v. First National Bank*, 548 F.2d 255 (8th Cir. 1977) ..........................................9

*Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983) .....................3

*Franklin National Bank v. New York*, 347 U.S. 373 (1954) ...........................................6

*Grand Trunk Western Ry. Co. v. Lindsay*, 233 U.S. 42 (1914) ...................................... 5

*Greenwood Trust Co. v. Commonwealth of Massachusetts,*
     971 F.2d 818 (1st Cir. 1992)...................................................................4, 7, 9, 21

*Illinois Ass'n of Mortg. Brokers v. Office of Banks and Real Estate*,
   308 F.3d 762 (7th Cir. 2002) ......................................................... 19

*J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred Intern., Inc.*, 534 U.S. 124 (2001) ........................... 19

*Krispin v. May Department Stores Co.*, 218 F.3d 919 (8th Cir. 2000).........................3, 16, 17, 18

*Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908)..................................................... 3

*M. Nahas & Co., Inc. v. First National Bank of Hot Springs*, 930 F.2d 608
   (8th Cir. 1991)................................................................................................................3, 13, 22

*Marquette National Bank v. First Of Omaha Serv. Corp.*, 439 U.S. 299 (1978) ................. passim

*McClellan v. Chipman*, 164 U.S. 347 (1896) ..............................................................................6

*Miller v. King*, 223 U.S. 505 (1912) ....................................................................................... 15

*Najarro v. SASI Int'l, Ltd.*, 904 F.2d 1002 (5th Cir. 1990) ............................................................ 9

*Panos v. Smith*, 116 F.2d 445 (6th Cir. 1940)..........................................................................10

*Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998) ................................................................... 4

*Robb v. Hungebeeler*, 370 F.3d 735 (8th Cir. 2004)................................................................... 2

*Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735 (1996)........................................ 4, 8, 9, 12

*Spellman v. Meridian Bank*, 1995 WL 764548 (3d Cir. 1995)............................................. 22, 23

*Tiffany v. National Bank of Missouri*, 85 U.S. 409 (1873) ........................................................8, 16

*United Transp. Union v. Surface Transp. Bd.*, 183 F.3d 606 (7th Cir. 1999)……………......……19

*Westcott v. City of Omaha*, 901 F.2d 1486 (8th Cir. 1990)……………………………………………12

## STATE CASES

*Adkison v. FirstPlus Bank, et al.*, 2004 WL 1098941
   (Mo. App. W.D. May 18, 2004)……………………………………………………………passim

*Ament v. PNC Nat'l Bank*, 825 F. Supp. 1243 (W.D. Pa. 1992)…………………….………..22

*Avila v. Community Bank*, 2003 WL 2202779 (Mo. App. W.D., Aug. 23, 2003)..................1, 2, 5

*Budnik v. Bank of America Mortgage*, 2003 WL 22964372 (N.D. Ill. 2003)................................10

*Cappalli v. Nordstrom FSB*, 155 F. Supp.2d 339 (E.D. Pa. 2001) ................................21

*Cross-Country Bank v. Klussman*, 2004 WL 966289 (N.D. Cal., Apr. 30, 2004)........................ 11

*Crowne Investments, Inc. v. United Food & Comm'l Workers, Local No. 1657*,
  959 F. Supp. 1473 (M.D. Ala. 1997) ........................................................................... 5

*Goehl v. Mellon Bank*, 825 F.Supp. 1239 (E.D. Pa. 1993) ...........................................................23

*Hancock v. Bank of America*, 272 F. Supp.2d 608 (W.D. Ky. 2003) ................................... 11, 21

*Hill v. Chemical Bank*, 799 F. Supp. 948 (D. Minn. 1992) ........................................................ 7, 9

*Hinton v. Sigma-Aldrich Corp.*, 93 S.W.3d 755 (Mo. App. E.D. 2002)........................................ 2

*Hunter v. Rich's Dep't Stores*, 945 F. Supp. 1500 (N.D. Ala. 1995) ............................................ 8

*Kenney v. Farmers Nat'l Bank*, 938 F.Supp. 789 (M.D. Ala. 1996)............................................ 11

*Kinkaid v. John Morrell & Co.*, et. al., 321 F. Supp.2d 1090 (N.D. Iowa 2004) ......................... 12

*M&H Enters. v. Tri-State Delta Chemicals, Inc.*, 984 S.W.2d 175 (Mo. App. S.D. 1998)........... 2

*Miller v. PPG Industries, Inc.*, 237 F. Supp.2d 756 (W.D. Kent. 2002) ..................................... 12

*MorEquity, Inc. v. Naeem*, 118 F. Supp.2d 885 (N.D. Ill. 2000)................................................. 10

*Nelson v. Citibank (South Dakota) N.A.*, 794 F. Supp. 312 (D. Minn. 1992)..................... 4, 8, 22

*Phipps v. Guaranty Nat'l Bank*, 2003 WL 22149646 (W.D. Mo. Sept. 17, 2003)............passim

*Taylor v. Wells Fargo Home Mortgage Inc.*, 2004 WL 85667
  (E.D. La., April 20, 2004) ......................................................................................9, 12, 18

*Tikkanen v. Citibank (South Dakota), N.A.*, 801 F. Supp. 270 (D. Minn. 1992).....................9, 14

*VideoTrax, Inc. v. NationsBank, NA*, 33 F. Supp.2d 1041 (S.D. Fla. 1998)................................ 11

*Wachovia Bank N.A. v. Burke*, 319 F.Supp.2d 275 (D. Conn. 2004) ......................................... 21

*Wachovia Bank N.A. v. Watters*, 2004 WL 1948655 (W.D. Mich. Aug. 30, 2004) .................... 21

*Washington Mut. Bank, FA v. Superior Court*, 95 Cal. App. 4th 606 (2003)..........................21

# DOCKETED CASES

*Baker v. Century Fin. Group, Inc.*, No. 01-0903-CV-W-SOW
  (W.D. Mo. Nov 19, 2001) ........................................................................................24

*Beaver v. U.S. Bank, N.A.*, No. 01-0989-CV-W-5 (W.D. Mo. Nov. 6, 2001) ...........................24

*Dannewitz v. Equicredit Corp. of America*, Case No. 01-L-008188
  (Cir. Ct. Cook Cty., IL, June 29, 2004) .................................................................15

*Schwartz v. Bann-Cor, et al.*, Case No. 03-922-CV-W-FJG (June 14, 2004) ...............................17

# FEDERAL STATUTES

12 C.F.R. § 7.4001 ............................................................................................ passim

12 C.F.R. § 34.3 ............................................................................................18, 20

12 C.F.R. § 560.2 ............................................................................................18, 21

5 U.S.C. §553(d) ............................................................................................19

12 U.S.C. § 24 (Seventh) ............................................................................14, 15, 20, 21

12 U.S.C. § 85 ............................................................................................ passim

12 U.S.C. § 86 ............................................................................................ passim

12 U.S.C. 371 ............................................................................................20, 21, 22

12 U.S.C. § 1463 ............................................................................................21

12 U.S.C. §1828 ............................................................................................20

12 U.S.C. § 1831d ............................................................................................1, 6, 7, 8, 9

12 U.S.C. § 2601 ............................................................................................6

15 U.S.C. § 1601 ............................................................................................6

15 U.S.C. §1641(d) ............................................................................................5, 18

28 U.S.C. § 1441(b) ............................................................................................3

## STATE STATUTES

Mo. Rev. Stat. §408.060 ...................................................................................................22

Mo. Rev. Stat. §408.233.1 ..............................................................................................15

Mo. Rev. Stat. §408.236 .................................................................................................15

## MISCELLANEOUS

61 Fed. Reg. 4858 ......................................................................................................8, 14

61 Fed. Reg. 50951 ........................................................................................................18

68 Fed Reg. 46119 .........................................................................................................19

68 Fed. Reg. 46264 ...............................................................................................7, 18, 19

68 Fed. Reg. 46267 ..........................................................................................................7

68 Fed. Reg. 46271 ........................................................................................................16

68 Fed. Reg. 46278 ........................................................................................................21

69 Fed. Reg. 1904 .................................................................................................7, 18, 20

OCC Interp. Let. 744 1996 WL 636765 .........................................................................10

OCC Interp. Let. 803 1997 WL 66283 ......................................................................10, 13

OCC Interp. Let. 817 1998 WL 107261 .........................................................................10

## I.    INTRODUCTION

U.S. Bank National Association ("U.S. Bank") and U.S. Bank National Association ND ("U.S. Bank ND") properly removed plaintiffs' state court petition to this Court on the basis of complete preemption.[1] The claims and causes of action arise from loans made by FirstPlus Bank, a California entity that was insured by federal law, namely the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811 *et seq.* As such, the Depository Institutions Deregulation and Monetary Control Act ("DIDA") completely preempts the plaintiffs' claims. 12 U.S.C. § 1831d(a) ("Section 521"). Under DIDA, FirstPlus Bank was legally entitled to export its loan terms, including the rates and charges permitted in California. *Id.*; *see also Adkison v. FirstPlus Bank, et al.*, 2004 WL 1098941 (Mo. App. W.D. May 18, 2004) (SMLA does not apply to loans from FirstPlus Bank, a federally-insured entity, entitled to export interest rates under DIDA); *Avila v. Community Bank*, 2003 WL 2202779 (Mo. App. W.D., Aug. 23, 2003) (SMLA does not apply to loans made by federally insured institution because of DIDA).

DIDA Section 521 is modeled after §§ 85 and 86 of the National Bank Act ("NBA") and should, therefore, be interpreted consistent with those sections. Because there is "no such thing as a state-law claim of usury" against a federally insured bank, *see Beneficial Natl. Bank v. Anderson*, 123 S. Ct. 2058, 2064 (2003), plaintiffs' claims, based on allegedly excessive or improper interest and loan fees, regardless of nomenclature, are rooted in usury and fall within the scope of DIDA complete preemption.

In addition to removal based upon DIDA preemption, the national banks claim complete preemption under the NBA. Preemption is not determined by labels selected by the party opposing

---

[1]U.S. Bank and U.S. Bank ND timely removed this case on August 23, 2004. Plaintiffs did not file their motion to remand until October 7, 2004, a week after defendants filed their motions to dismiss and more than thirty (30) days after the removal.

removal, but rather by the substance of the claims alleged. Plaintiffs are in reality seeking to recover damages from national banks alleged to have collected fees for the extension of credit and excessive interest. Plaintiffs' claims are therefore governed by the NBA and their state law claims are completely preempted.

Remarkably, plaintiffs place great significance upon a 2001 order issued in *Adkison v. FirstPlus Bank*, No. 00-0622-CV-W-2-FJG, a case plaintiffs' counsel filed involving FirstPlus Bank loans made in 1997 and 1998 just as those here. However, the law has changed since 2001. First, in *Beneficial Nat'l Bank*, the Supreme Court ruled that the NBA is the sole source of law regulating a national bank's interest charges and the sole federal remedy for claims alleging that a national bank has received excessive interest. *Beneficial Nat'l Bank*, 123 S. Ct. at 2064. Second, Judge Fenner rejected plaintiffs' arguments that relied on the 2001 *Adkison* order when he ruled that NBA removal was proper following the *Beneficial Nat'l Bank* decision. *Phipps v. Guaranty Nat'l Bank*, 2003 WL 22149646 *6 (W.D. Mo. Sept. 17, 2003). Thus, the 2001 *Adkison* order does not control. Ironically, plaintiffs do not even mention that it is the same *Adkison* case that Judge Gaitan remanded prior to *Beneficial* which held, citing the authority of DIDA, there can be no state law claim under the Second Mortgage Loan Act ("SMLA") against FirstPlus Bank and its assignees. *Adkison*, 2004 WL 1098941; *see also Phipps*, 2003 WL 22149676 *7 n.6.[2]

---

[2]  In the face of the holding in *Adkison*, decided two weeks **before** filing this petition, plaintiffs again allege that loans made by FirstPlus Bank violate the SMLA. However, plaintiffs' claims are not viable because the SMLA in effect at the time the plaintiffs' loans were made (in 1997 and 1998) has been held inapplicable to loans from FirstPlus. *Adkison*, 2004 WL 1098941, is not only on-point authority, it is **the** authority on FirstPlus loans. *See Robb v. Hungebeeler*, 370 F.3d 735, 740 (8th Cir. 2004) (noting that *stare decisis* obligates the court to apply the same principles applied in a previous case); *M&H Enters. v. Tri-State Delta Chemicals, Inc.*, 984 S.W.2d 175, 178 n.3 (Mo. App. S.D. 1998) ("*stare decisis* is the cornerstone of our legal system"); *Hinton v. Sigma-Aldrich Corp.*, 93 S.W.3d 755, 760 (Mo. App. E.D. 2002) ("strong presumption that judicial construction of a statute has continued validity"); *see also Avila*, 2003 WL 2202779. Defendants hereby incorporate and direct the Court to their arguments and authorities cited in their joint motion to dismiss on the basis of preemption (Document Nos. 57 and 58). To the extent plaintiffs now seek to rely on an August 28, 2004 amendment to the SMLA applied retrospectively to loans made in 1997 and 1998, the United States and Missouri Constitutions bar such claims. *See* defendants' joint motion to dismiss (Document Nos. 59 and 60).

2

For these reasons, the motion to remand should be denied. Moreover, plaintiffs' claims must

be dismissed

## II.    PLAINTIFFS' MOTION TO REMAND SHOULD BE DENIED

### A.    This Action Was Properly Removed Because Federal Jurisdiction Exists Under DIDA and the NBA and Plaintiffs' Artful Pleading Belies the Federal Nature of Their Claims.

Removal was proper due to this Court having federal jurisdiction over the claims in

plaintiffs' petition. A civil action filed in a state court may be removed to federal court if the claim

is one "arising under" federal law. 28 U.S.C. § 1441(b). Under the "well pleaded complaint" rule, a

case is not removable unless the complaint alleges a federal claim. *Louisville & Nashville R. Co. v.*

*Mottley*, 211 U.S. 149, 152 (1908). There are exceptions to the rule, one of which allows a state

court action to be removed where a federal statute's preemptive force "is so powerful as to displace

entirely any state cause of action." *Franchise Tax Board v. Construction Laborers Vacation Trust*,

463 U.S. 1, 23-24 (1983). As the Supreme Court wrote in *Beneficial Nat'l Bank,*

> Thus, a state claim may be removed to federal court . . . when a federal statute
> wholly displaces the state-law cause of action though complete preemption. When
> the federal statute completely preempts the state-law cause of action, a claim which
> comes within the scope of that cause of action, even if pleaded in terms of state law,
> is in reality based on federal law. This claim is then removable under 28 U.S.C.
> § 1441(b), which authorizes any claim that "arises under" federal law to be removed
> to federal court.

123 S. Ct. at 2063; *see also Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 922 (8th Cir. 2000)

(applying "'complete preemption,' under which the preemptive force of certain federal statutes is

deemed so 'extraordinary' as to convert complaints purportedly based on the preempted state law"

into complaints alleging a federal claim); *M. Nahas & Co. v. First Nat'l Bank*, 930 F.2d 608, 612

(8th Cir. 1991) ("Thus, whether or not plaintiff artfully attempted to couch its complaint wholly in

state law terms, it was necessarily federal in nature and properly removable").

1613900.1

When a plaintiff's state law cause of action and remedy are preempted by federal law and Congress has created an exclusively federal remedy in their stead, a plaintiff has no choice but to invoke the federal cause of action if he wishes to challenge the underlying conduct. In such circumstances, a complaint nominally alleging violations of the displaced state cause of action can be viewed only as a claim arising under the remaining federal cause of action. *See Avery Corp. v. Aero Lodge No. 735*, 390 U.S. 557 (1968); *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) ("[i]f a court concludes that a plaintiff has 'artfully pleaded' claims . . . , it may uphold removal even though no federal question appears on the face of plaintiff's complaint"); *Nelson v. Citibank (South Dakota) N.A.*, 794 F. Supp. 312, 315 (D. Minn. 1992).

In *Beneficial Natl. Bank*, the Court noted that §§ 85 and 86 of the NBA determine the amount of interest national banks may charge, and that any claim that a national bank charged excessive interest could only be brought under the Act. The Court concluded:

> Because §§ 85 and 86 provide the exclusive cause of action for such [usury] claims, there is, in short, no such thing as a state-law claim of usury against a national bank. Even though the complaint makes no mention of federal law, it unquestionably and unambiguously claims that petitioners violated usury laws. This cause of action against national banks only arises under federal law and could, therefore, be removed under § 1441.

*Id.* at 2064.

Plaintiffs do not dispute that U.S. Bank and U.S. Bank ND are federally chartered national banks (*see* Pl. Compl., ¶¶ 25, 27), which are therefore entitled to "most favored lender" preemption authority under the NBA. *Marquette Nat'l Bank v. First of Omaha Serv. Corp.*, 439 U.S. 299, 311-19 (1978); *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 745-46 (1996); *Greenwood Trust Co. v. Commonwealth of Massachusetts*, 971 F.2d 818 (1st Cir. 1992). Plaintiffs also allege in their petition that U.S. Bank and U.S. Bank ND are collecting excessive interest (Pl. Compl., ¶¶ 60, 61, 80, 83, 94, 111, 113, 116). Plaintiffs likewise cannot dispute that FirstPlus Bank is a lender subject

4

to the Federal Deposit Insurance Act and privileged to export its rates and charges under DIDA. *See Adkison,* 2004 WL 1098941; *see also Phipps,* 2003 WL 22149646 *7 n.6; *Avila,* 2003 WL 2202779; Exhibit 1, affidavit of Vicki Best-McIntyre ¶ 11; Exhibit 2, Corporate Documents of California Secretary of State; Exhibit 3, FDIC Insurance Certificate; Exhibit 4, FirstPlus Bank Statement of Lending Authority executed by Mr. and Mrs. Thomas.

Plaintiffs nevertheless hope to skirt the outcome of *Beneficial Nat'l Bank* by artfully pleading that they make no claim their loans violate either state or federal usury statutes. As will be discussed more fully below, plaintiffs made the same argument in *Phipps* and lost. *Phipps*, 2003 WL 22149646 at *5-6. (Plaintiffs deliberately relegate *Phipps* to a footnote without addressing the decision despite it being this court's most recent post-*Beneficial* case.) And, their omission of any reference to DIDA or the NBA in their petition does not compel a contrary result. *See Grand Trunk Western Ry. Co. v. Lindsay*, 233 U.S. 42, 48 (1914).[3] "It is because of the doctrine of 'complete preemption' that this court must look beyond the face of [the] Complaint, which alleges no claims under federal law, and examine the substance of [plaintiffs'] claims." *Crowne Investments, Inc. v. United Food & Comm'l Workers, Local No. 1657*, 959 F. Supp. 1473, 1476 (M.D. Ala. 1997).

Because plaintiffs assert that FirstPlus Bank originated their loans and that U.S. Bank and U.S. Bank ND have taken and received and are taking and receiving excessive interest and loan fees which are defined as interest under DIDA and the NBA (Pl. Compl., ¶¶ 19, 60, 61, 80, 83, 94, 111,

---

[3]The transparency of plaintiffs' attempt to dodge this Court by carefully avoiding any mention of a federal claim is exposed by their argument expressly invoking a federal statute (15 U.S.C. § 1641(d)) as the premise of their "assignee liability" theory. (Pl. Sugg. at p. 5). Defendants recognize that, while the federal courts here have previously held that plaintiffs were not making a claim under federal law, because of representations that they were merely relying on the law to remove a possible defense, the plaintiffs' true colors show in opposing removal by their statement that these cases are prominently entangled with federal law: "Such 'assignee liability' arises pursuant to what is known as the 'HOEPA rule' of liability, 15 U.S.C. § 1641(d). . . ." (*Id.*) Plaintiffs should not be permitted to use a federal statute to impose liability but then deny they are relying on federal law for their right to recover.

113, 116), federal jurisdiction is not only appropriate, it is mandated. *Beneficial Nat'l Bank*, 123

S. Ct. at 2064.

      **B.**      **DIDA, Specifically 12 U.S.C. § 1831d, and NBA, 12 U.S.C. §§ 85, 86, Make Clear that There Can Be No State Law Claim Against FirstPlus Bank or its Assignees.**

            **1.**      **FirstPlus Bank and the National Banks have most favored lender preemption authority.**

State law may be applied to the federal powers of insured banks and associations[4] **only** when

Congress expressly directs that result. *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25,

32 (1996). Any attempt by a state:

> to define the [insured banks'] duties or control the conduct of their affairs is absolutely void, where such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation, or impairs the efficiency of these agencies of the Federal government to discharge the duties for the performance of which they were created.

*Davis v. Elmire Sav. Banks*, 161 U.S. 275, 283 (1896); *see also Franklin Nat. Bank v. New York*, 347

U.S. 373, 378 n.7 (1954) (stating that federally insured institutions "may be subject to some state

laws in the normal course of business if there is conflict with federal law"); *McClellan v. Chipman*,

164 U.S. 347, 359 (1896) (noting that state law is preempted whenever it "conflict[s]" with federal

law, "frustrate[s]" the purposes of national banking system, or "impair[s]" the [insured] banks'

abilities to discharge their federal rights and responsibilities).[5] The application of multiple, often

unpredictable, different state or local restrictions and requirements prevents federally-insured banks

---

[4]The term "insured banks and associations" refers alike to federally-insured state banks/associations and national banks/associations.

[5]A state may regulate a bank's activities in ways that do not alter or place any condition upon the bank's ability to exercise its federal powers. *See Barnett Bank*, 517 U.S. at 33-34; *see also Bank of America v. City & County of San Francisco*, 309 F.3d 551, 559 (9th Cir. 2002) ("[S]tates retain some power to regulate national banks in areas such as contracts, debt collection, acquisition of property, taxation, zoning, and tort law."). However, borrowers are not left without consumer protection. To the contrary, banks are subject to extensive federal regulation and must comply with federal laws such as DIDA, NBA, Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* and Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*

from operating in the manner authorized under federal law, is costly and burdensome, interferes with their ability to plan their business and manage their risks, and subjects them to uncertain liabilities and potential exposure.[6]  In some cases, this deters banks from making certain products available in certain jurisdictions, and in the end only deprives the consumer of competitive options in banking.[7]

The NBA (12 U.S.C. § 85) and DIDA (12 U.S.C. § 1831d) allow national banks and federally-insured state banks to "export" favorable interest rates and fees from their home states to borrowers from other states.  *Marquette Nat'l Bank v. First Of Omaha Serv. Corp.*, 439 U.S. 299, 311-19 (1978); *Phipps*, 2003 WL 22149646 at *4; *Greenwood Trust Co.*, 971 F.2d 818 (stating Congress tried to level the playing field between federally chartered and state-chartered banks when it enacted DIDA); *see also Adkison*, 2004 WL 1098941(holding that there is no SMLA claim on FirstPlus Bank loans citing DIDA).  DIDA is construed in *pari materia* with the NBA.  *Greenwood Trust Co.*, 971 F.2d at 827; *Hill v. Chemical Bank*, 799 F. Supp. 948 (D. Minn. 1992).  In other words, the NBA and DIDA afford national banks and federally-insured state banks "most favored lender" status, permitting those lenders to export the laws of its home state and charge the higher rates which could be charged by any competing institution in the state in which it is located.  *See*, *e.g.*, *Marquette Nat'l Bank*, 439 U.S. at 311-19; *Greenwood Trust Co.*, 971 F.2d at 827; *Hill*, 799 F. Supp at 951-54.  The Supreme Court has made clear that a lender with "most favored lender" authority may collect (or take and receive) "interest" at the rate and amounts allowed by the state in which it is located on loans made both to residents of that state and to residents of other states.

---

[6]States can have a detrimental effect on that bank's operations and consumers.  For example, in Georgia, the Georgia Fair Lending Act (GFLA) caused secondary market participants to cease purchasing certain Georgia mortgages and many mortgage lenders to stop making mortgage loans in Georgia.  *See Preemption Determination and Order*, 68 Fed. Reg. 46264, 46267 (Aug. 5, 2003).

[7]*Bank Activities and Operations; Real Estate Lending and Appraisals*, 69 Fed. Reg. 1904, 1908 (Jan. 13, 2004).

*Smiley*, 517 U.S. at 745-47; *Marquette Nat'l Bank*, 439 U.S. at 311-19; 12 U.S.C. § 85; 12 U.S.C. § 1831d.

### 2.     The broad definition of "interest" extends to origination fees.

A central feature to the uniform rules regarding usury claims brought against insured banks and associations is the federal definition of usury and interest. *Evans v. National Bank of Savannah*, 251 U.S. 108, 115 (1919) ("federal law . . . completely defines what constitutes the taking of usury by a national bank . . . ."); *see also Beneficial Nat'l Bank*, 123 S. Ct. at 2064 (same).   A federal definition of usury is essential due to the "longstanding and consistent construction of the National Bank Act as providing an exclusive federal cause of action for usury against national banks [as well as] the special nature of federally chartered banks."  *Beneficial Nat'l Bank*, 123 S. Ct. at 2064. Sections 85 and 86 are part of the goal of Congress to protect national banks from the "hazard of unfriendly legislation by the States." *Tiffany v. National Bank of Missouri*, 85 U.S. 409, 413 (1873). Therefore, plaintiffs' repeated unfounded statements that the allegedly unlawful fees that FirstPlus Bank charged and that U.S. Bank and U.S. Bank ND collected are "non-interest" charges under state law miss the mark; federal law must be used to interpret what is interest.  *See Evans,* 251 U.S. at 115; *Beneficial Nat'l Bank*, 123 S. Ct. at 2064.

There is no dispute that the NBA completely preempts interest and those charges properly deemed to be interest.  Charges imposed for the extension of credit are properly deemed to be interest.  Under federal law, "rate of interest" includes flat charges as well as charges expressed as a function of time.  *See Hunter v. Rich's Dep't Stores*, 945 F. Supp. 1500, 1504 (N.D. Ala. 1995) ("Interest charges covered by Section 85 frequently are calculated, for example, at a flat rate"); *Nelson*, 794 F. Supp. at 320; *see also Charging Interest at Rates Permitted Competing Institutions*, 61 Fed. Reg. 4858-59 ("Most courts interpreting 12 U.S.C. 85 have concluded that varying forms of

8

non-percentage-base charges . . . for the use of borrowed money fall within the scope of 12 U.S.C. 85."); *Najarro v. SASI Int'l, Ltd*., 904 F.2d 1002, 1006 (5th Cir. 1990) ("in determining whether a loan transaction is usurious, it is substance rather than form that is investigated. . . . Charges which are in fact interest remain so, regardless of the label used.") (citations and quotations omitted).

Plaintiffs argue, as they did in *Phipps* and have in other circumstances, that they do not complain about the interest rate on their loans. However, preemption is not limited to the numerical interest "rate." The NBA and DIDA broadly define "interest" to include both numerical interest rates *and* other closing costs and fees paid as compensation for the extension of credit to plaintiffs. For example, the OCC has broadly defined "interest" using the exact same language for purposes of § 85 of the NBA:

> The term "interest" . . . includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees.

12 C.F.R. § 7.4001(a). DIDA mirrors the NBA. *Compare* 12 U.S.C. § 85 *with* 12 U.S.C. § 1831d.

Interpreting the definition of interest, courts have repeatedly and consistently held that interest includes both the numerical percentage rate and other loan fees or charges. *See*, *e.g.*, *Taylor v. Wells Fargo Home Mortgage Inc.,* 2004 WL 85667 *1, *3 (E.D. La. April 20, 2004); *Phipps*, 2003 WL 22149646 at *6 (origination, discount fees, annual fees, cash advance fees, and membership fees fit within definition of "interest"); *Smiley, N.A.*, 517 U.S. at 745-46 ("interest" under NBA and as defined by OCC in section 7.4001 encompasses late payment fees); *Fisher v. First Nat'l Bank*, 548 F.2d 255, 258-61 (8th Cir. 1977) (fee for cash advance); *Greenwood Trust Co.,* 971 F.2d 818 (late fee held to be interest); *Hill*, 799 F. Supp. at 953 (late and overlimit fees held to be interest); *Tikkanen v. Citibank (South Dakota), N.A.*, 801 F. Supp. 270 (D. Minn. 1992) (late and

overlimit fees held to be interest); *MorEquity, Inc. v. Naeem*, 118 F. Supp.2d 885, 898 (N.D. Ill. 2000) (excess finance charges and fees held to be interest); *Budnik v. Bank of America Mortgage*, 2003 WL 22964372 (N.D. Ill. 2003)(unearned interest retained).[8]

In *Phipps*, Judge Fenner thoroughly discussed the definition of "interest," concluding that the closing costs associated with the loans at issue were "interest" within the meaning of the NBA. *Phipps*, 2003 WL 22149646 at *6. He noted, just as here, that the plaintiffs complained that loan fees, including origination fees, violated the SMLA. Judge Fenner stated:

> The critical inquiry is whether the fees are charged in consideration for the advancement of credit or a loan. The loan origination fees and the loan discount fees appear to fit that bill . . . . [They] help the bank in dealing with the costs and considerable risks associated with making second mortgage loans . . . . Loan origination fees and loan discount fees are generally not collected unless a loan is actually made. They are designed to eliminate, from the lender's perspective, potential risks that might have made an individual an unattractive credit risk . . . . Because these origination and discount fees help offset risk and are only levied in the event a loan is extended, as opposed to appraisal or credit report fees, the fees fit within the OCC's definition of "interest." It thus appears on the face of the complaint that the Phipps are claiming that Guaranty charged them unlawful "interest" as defined by the OCC . . . . Given the true nature of the Phipps' claim, that of unlawful interest within the OCC's definition, any state law claims are completely preempted and the Phipps are subject to federal jurisdiction.

The same analysis and result is compelled here because there is no meaningful difference between the fees at issue in *Phipps* and those challenged here. There is no dispute whether the alleged unlawful origination fees were disclosed plainly on the plaintiffs' HUD-1 Settlement Statements (attached hereto as Exhibit 5 and Exhibit 6). Each one of the fees was directly associated

---

[8]Numerous other cases have held fees or charges other than the applicable numerical rate to be interest. *See American Timber & Trading Co. v. First Nat'l Bank*, 690 F.2d 781, 787-88 (9th Cir. 1982) (compensating balance requirement); *Panos v. Smith*, 116 F.2d 445, 446-47 (6th Cir. 1940) (taxes and recording fees); *Cronkleton v. Hall*, 66 F.2d 384, 387 (8th Cir. 1933) (bonus or commission paid to lender). Likewise, since the adoption of the interest definition in section 7.4001, the OCC has found that still more fees, including account opening fees, fees for exercising a fixed rate option, prepayment fees and rejected item fees and also fall within the scope of "interest" under section 7.4001 and section 85 of the NBA. *See* OCC Interp. Let. 803, 1997 WL 66283 (Oct. 7, 1997); OCC Interp. Let. 744, 1996 WL 636765 (Aug. 21, 1996) (prepayment fees); OCC Interp. Let. 817, 1998 WL 107261 (Jan. 7, 1998) (reject fees).

with the extension of credit to the plaintiffs. These alleged illegal origination fees were assessed to help the bank in dealing with the costs and considerable risks associated with making second mortgage loans. Plaintiffs even admit that the alleged illegal origination fees were disclosed at the time the loans were funded as charges payable to the lender, *i.e.*, these fees are part of its compensation for making the loan to the borrowers. (Pl. Compl.¶¶ 67, 68 and 72.)

Plaintiffs' cases are inapposite because they refer specifically to fees that were not incurred for purposes of the extension of credit. *E.g.*, *Hancock v. Bank of America*, 272 F. Supp.2d 608 (W.D. Ky. 2003) (parties stipulated that fax fees were not interest); *VideoTrax, Inc. v. NationsBank, NA*, 33 F. Supp.2d 1041 (S.D. Fla. 1998) (overdraft fee not charged in credit transaction); *Doe v. Norwest Bank Minnesota, NA*, 107 F.3d 1297 (8th Cir. 1997) (mortgage insurance premium); *Kenney v. Farmers Nat'l Bank,* 938 F.Supp. 789 (M.D. Ala. 1996) (mortgage insurance premium). Plaintiffs also rely mistakenly on *Cross-Country Bank v. Klussman*, 2004 WL 966289 (N.D. Cal., Apr. 30, 2004). There, the borrowers alleged that certain fees were charged by the bank in a deceptive manner. *Id.* at *6. The borrowers claimed that the defendants misrepresented the nature and cost of their services, not that they charged usurious interest. *Id. Klussman* is inapposite as plaintiffs here are making what amounts to be a claim for usury under federal law because they are claiming excessive interest and charges were made. The court recognized that, unlike here, the plaintiffs were not challenging the amounts of fees charged. *Id.*

Plaintiffs' characterization that the allegedly unlawful fees they were charged are "finders fees" is also unsupportable. Plaintiffs argued likewise in *Phipps* but the record there did not support it either. *Phipps*, 2003 WL 22149646 * 6. There is not one single charge identified as a "finders fee" on the plaintiffs' HUD-1 Settlement Statements. (Exhibits 5 and Exhibit 6.) The documents plainly contradict plaintiffs' allegation. The court is not constrained by the legal characterizations

11

that the plaintiffs place on their allegations, and need not accept as true legal conclusions or unwarranted factual inferences. *See Kinkaid v. John Morrell & Co., et. al.*, 321 F. Supp.2d 1090, 1095 (N.D. Iowa 2004) (citing *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)). In addition, while the propriety of removal is based upon the plaintiff's pleadings at the time of removal, the court may pierce the pleadings and consider other evidence submitted in opposition to remand. *See Bastien v. AT&T Wireless Svs., Inc.*, 205 F.3d 983, 990 (7th Cir. 2000); *Cavallini v. State Farm Mut. Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995); *Miller v. PPG Industries, Inc.*, 237 F. Supp.2d 756, 759 (W.D. Kent. 2002). The words "finders fees" are found **nowhere** on the plaintiffs' HUD-1 Settlement Statements. Applying the federal interest definition, the fees about which plaintiffs complain in this action are "interest" under DIDA and the NBA and, accordingly, plaintiffs' excessive fee claims are completely preempted and removal was proper. *Beneficial Nat'l Bank*, 123 S. Ct. at 2064; *Taylor,* 2004 WL 85667 *1, at *3; *Phipps*, 2003 WL 22149646 *6.

     **C.    Because Plaintiffs' Excessive Fee Claim is Subsumed Within the Broad Federal Definition of Interest, Plaintiffs' Claim is Preempted.**

DIDA, the NBA and the Supreme Court's interpretation of them make clear that a lender with "most favored lender" authority may charge or receive "interest" at the rate and amounts allowed by the state in which it is located on loans made both to residents of that state and to residents of other states. *Smiley*, 517 U.S. at 745-47; *Marquette Nat'l Bank*, 439 U.S. at 311-19. Here, FirstPlus Bank is entitled to charge and U.S. Bank and U.S. Bank ND are permitted to collect interest from Missouri borrowers at the rate and amount permitted under California, Minnesota and North Dakota laws, respectively. *Cf. Adkison*, 2004 WL 1098941.

Plaintiffs nevertheless assert that complete preemption only applies when claims "without dispute" involve charges of excessive interest. (Pl. Sugg. at 13.) To support their proposition, plaintiffs rely upon the January 19, 2001 order issued in *Adkison v. FirstPlus Bank,*

12

No. 00-0622-CV-W-2-FJG.  However, their reliance is misplaced because the Supreme Court in *Beneficial Nat'l Bank*, decided **after** that order, has now resolved any doubts that complete preemption exists under the NBA §§ 85, 86.  Moreover, as recognized in *Phipps*, plaintiffs have misinterpreted the law.  *Phipps*, 2003 WL 22149646 at *5.

Contrary to plaintiffs' counsel's erroneous description, the *Nahas* court never used the phrase "without dispute," nor did the Eighth Circuit imply that only undisputed claims could be completed preempted.  *See Nahas*, 930 F.2d at 612.  It would indeed be "anomalous . . . to construe a statute that was intended to increase federal preemption of state substantive usury law as also reflecting a hidden congressional intent to decrease federal preemption of usury penalties."  *Nahas*, 930 F.2d at 611.  While in *Adkison* the court stated that in "*Nahas* the Eighth Circuit held that where claims, <u>without dispute,</u> involve an issue of interest and claim of usury, those state claims will be completely preempted by the federal remedy," slip. op. at 7 (emphasis in original), the court did so apparently in reliance on plaintiffs' counsel's misstatement of the *Nahas* court's holding. (*Compare* Plaintiffs' brief at p. 8 attached hereto as Exhibit 7, *with* slip op. at 7).

The central flaw to plaintiffs' "without dispute" argument is that it stems from an undue reliance on the "enumerated" subjects in the OCC's definition of interest.  *See Adkison*, slip op. at 7-8.  The argument is made that only when a challenged "fee" is specifically listed as an item of interest in 12 C.F.R. § 7.4001(a) can it be interest "without dispute" and subject to complete preemption.  There are four problems with this argument.

First, the examples listed in the OCC's definition of interest are "non-exclusive."  That is, the OCC fully expected that many other fees would, and should, be classified as interest.  OCC Interp. Let. 803, 1998 WL 320183 (Oct. 7, 1997) (12 C.F.R. 7.4001(a) is a "nonexclusive list of examples of fees that constitute interest"); *Charging Interest at Rates Permitted Competing Institution*s, 61

13

Fed. Reg. 4859 ("the ruling is not intended to be a comprehensive treatment of the issue, and other fees or charges may also be found to be components of interest.").

Second, whether a particular charge is mentioned in the OCC's list is illustrative but not limiting. If a fee is "interest," then any claim asserting that the fee is excessive (*i.e.*, that it is usurious) is completely preempted. *Beneficial Nat'l Bank*, 123 S. Ct. at 2064 (there is "no such thing as a state-law claim of usury against a national bank.").

Third, numerous courts, and the OCC, have concluded that many "nonenumerated" items are interest. *See supra* p. 9-10 and n.8. Finally, origination, processing, underwriting and settlement fees are manifestly "fees connected with credit extension or availability." 12 C.F.R. § 7.4001(a). If banks were prohibited, or penalized, from charging and collecting these fees, then "credit extension or availability" would be lessened, contrary to federal policy.[9]

**D.      U.S. Bank and U.S. Bank ND Are Entitled to Removal and Preemption Regardless Of Whether They Originated Loans, Because Plaintiffs Claim They Are Collecting or Receiving Illegal Interest.**

Congress has empowered national banks to operate outside of certain state laws in order to further their purposes. *Tikkanen v. Citibank (South Dakota) N.A.*, 801 F. Supp. 270, 275 (D. Minn. 1992) (stating "attempt by a state to define [a national bank's] duties or control the conduct of [a national bank's] affairs is absolutely void" where such attempt interferes with the Congressionally defined powers and rights of national banks"). Part of the business of national banks is "discounting and negotiating promissory notes . . . and other evidences of debt." 12 U.S.C. § 24 (Seventh). A

---

[9]Lenders, of course, are in the business of making money (revenue and hopefully profit) by charging borrowers for the extension of credit. Except as they charge borrowers certain closing costs in an effort to reimburse closing related expenses (which are outside the proscriptions of the SMLA), any charges going to the lender either enhance the revenue or reduce the expense of the lender in respect to the lender's extension of credit–the charges are properly characterized as "interest." Plainly, from the standpoint of a lender engaged in a transaction with a borrower for the lending of money, fees other than for actual closing related expenses are for the extension of credit– for what else could they be?

national bank has the express power to "purchase for its own account . . . marketable obligations evidencing the indebtedness of any person." *Id*.; *see also Miller v. King*, 223 U.S. 505 (1912) (accepting assignment of debt is one of the express powers of a national bank). National banks also have all incidental powers necessary to carry on banking business. 12 U.S.C. § 24 (Seventh) (stating that national banks have "all such incidental powers as shall be necessary to carry on the business of banking"). Thus, the purchasing of mortgage loans is a power central to the business of national banks.

The power of national banks to acquire loans from other lenders is one of the reasons that the language of 12 U.S.C. §§ 85 and 86 is not limited to loans originated by national banks. The provisions of 12 U.S.C. § 85 govern all interest that a national bank can "take, receive, reserve and charge." 12 U.S.C. § 85. Plaintiffs focus much too narrowly on the word "charge" in § 85. If the statute only applied to loans and debt originated by a national bank, there would not be a need to include "take" or "receive." The statute would simply govern what national banks can "charge" on loans they originate. The key is taking or receiving interest–which is precisely the claim plaintiffs assert against U.S. Bank and U.S. Bank ND. *Compare* 12 U.S.C. § 85 ("take, **receive**, reserve and charge") (emphasis added) *with* Mo. Rev. Stat. § 408.233.1 ("directly or indirectly charged, contracted for or **received**") (emphasis added) and Mo. Rev. Stat. § 408.236 ("barred from recovery of any interest").

Furthermore, the provisions of 12 U.S.C. § 85 apply to "any loan" and "any notes . . . or other evidences of debt." *Id*. This language means what it says. "Any notes" and "any loan" does not mean only certain loans and notes, depending on the originator. The predicate language of 12 U.S.C. § 86 is similar. Contrary to plaintiffs' argument, neither § 85 nor § 86 has language limiting application to debt originated by a national bank. *See*, *e.g.*, *Dannewitz v. EquiCredit Corp.*,

15

Case No. OIL008188 (Cir. Ct. Cook Cty., IL), Order dated June 29, 2004 ("The NBA applies equally to all loans held by national banks. This Court finds nothing in the NBA which either expressly or implicitly distinguishes between loans generated by a national bank and those acquired from other institutions.") (Exhibit 8); *Daniel v. First National Bank*, 227 F.2d 353 (5th Cir. 1955) (NBA applicable to national bank assignee of non-national bank originator). These words in the NBA make clear that its reach is not limited to loan origination, but also to national banks that, in our free flow of capital, acquire instruments of debt and could otherwise be subjected to fifty varying state usury-type laws from which national banks were meant to be immunized.[10]

Consistent with this broad statutory language, the Eighth Circuit (and now the Supreme Court) says that these provisions of the NBA are exclusive and completely preempt state usury law with respect to national banks, *Beneficial Nat'l Bank*, 123 S. Ct. at 2064; *Krispin*, 218 F.3d at 922, whether or not the national bank originates the debt. For example, in *Krispin*, May Department Stores (the "May Stores") issued credit cards governed by Missouri law limiting fees. 218 F.3d at 921-22. Subsequently, the May Stores formed a national bank (the "Bank") to take over the credit card operations. *Id*. After the May Stores informed their customers of this change, the assignee Bank began assessing late fees allegedly in violation of Missouri law. *Id*. at 922. Even though the May Stores initially issued the credit cards under Missouri law, formed the Bank for the purpose of taking over the credit card operations, and assigned the Bank all of the credit card receivables, the Eighth Circuit held that the assignee Bank, not the May Stores, extended the credit. *Id*. at 923. The

---

[10] *See* attached *American Banker* articles regarding the substantial mortgage-backed lending industry. (Exhibit 9). The availability of credit from national banks like U.S. Bank and U.S. Bank ND is critical to the continued flow of money for lending to homeowners. This capital movement could not exist in a world in which these secondary market transactions required national banks to perform expensive, lengthy due diligence on loan pools relative to lending laws in each of the fifty states in which loans were originated. *Cf. Tiffany*, 85 U.S. at 413 (referring to the "hazard of unfriendly legislation by the States"); *see also* Statement of the Comptroller of the Currency John D. Hawke Jr. regarding National City Preemption Determination and Order, July 31, 2003 at www.occ.treas.gov.statementhawke.pdf (discussing practical effect of state lending laws on reduction of credit); Preemption Order, 68 Fed. Reg. at 46271 n.26, 46278.

16

necessary inquiry is not who originated the loan. Rather, the only test is whether the suit "actually amounts, at least in part, to a state law usury claim against the bank." *Id.* at 923. Although the plaintiffs in *Krispin* did not even sue the national bank, the national bank still had an interest and the NBA was implicated, thereby conferring federal jurisdiction.

Plaintiffs cite no cases for the blanket proposition that the NBA does not apply to assignees. Plaintiffs rely, however, on language from an order in *Schwartz v. Bann-Cor Mortgage, et al.*, CV No. 03-0922-CV-W-FJG (June 14, 2004). But the order in *Schwartz* does not reflect the very clear allegations that plaintiffs are making **direct** claims against the national banks for excessive interest. (Pl. Compl., ¶¶ 19, 60, 61, 80, 83, 94, 111, 113, 116). Further, here, FirstPlus Bank is entitled under DIDA to export rates of interest and charges from its home state (which was not discussed in *Schwartz*). *See Adkison*, 2004 WL 1098941. Therefore, based upon the Supreme Court decision in *Beneficial Natl. Bank*, the plaintiffs' state law usury claims against the national banks are completely preempted.

Moreover, the plaintiffs' reliance on *Federal Deposit Ins. Corp. v. Lattimore Land Corp.*, 656 F.2d 139 (5th Cir. 1981) is misplaced. There, the borrowers tried to stand the NBA on its head by arguing that, when the national bank located in Tennessee acquired the loan, § 85 operated to mandate the application of Tennessee usury law and thereby convert a non-usurious Georgia loan acquired by a national bank into a usurious Tennessee loan. *Id.* at 146-47. That is, the borrowers argued that their loans were initially lawful but became unlawful when transferred to an assignee. Striking the borrowers' usury defense, the court rejected this reverse application of the most favored lender status of a national bank, holding that, "under the circumstances," the "Tennessee interest limit of 10% does not apply," because § 85 does not "mandate" that absurd result. *Id.* at 147. *Lattimore* did not hold that the NBA never applies to loans unless originated by national banks. The

17

language of 12 U.S.C. § 85 encompasses circumstances where national banks "receive" payments of interest on any "evidences of debt." Moreover, a substantial body of law and regulations concerning national financial institutions and preemption have come into being since *Lattimore* was decided. *See, e.g.*, *Beneficial Nat'l Bank v. Anderson*, 123 S. Ct. 2058 (2003); *Fidelity Fed. Sav. & Loan v. de la Cuesta*, 458 U.S. 141, 160 (1982); *Krispin v. May Dept. Stores Co.*, 218 F.3d 919 (8th Cir. 2002); *Taylor v. Wells Fargo Home Mortgage*, 2004 WL 856673 (E.D. La. April 20, 2004); 12 C.F.R. § 560.2; 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996); 68 Fed. Reg. 46264 (Aug. 5, 2003); 69 Fed. Reg. 1904 (Jan. 13, 2004); 12 C.F.R. § 34.3.

Unlike in *Lattimore,* plaintiffs here maintain their notes were unlawful from the beginning. Plaintiffs claim that they are entitled to recover fees/interest because FirstPlus Bank charged them "unlawful" closing costs and interest. (Pl. Sugg. at 2). Plaintiffs also assert that U.S. Bank and U.S. Bank ND violate the law every time a payment is made, *i.e.*, each payment to U.S. Bank and U.S. Bank ND is a new violation of the SMLA by U.S. Bank and U.S. Bank ND. (Petition, ¶ 111.) Thus, plaintiffs are not solely asserting that the national banks are liable "derivatively" on the "illegal" loan, but also allege direct SMLA violations by the national banks. The plaintiffs (or members of the alleged class) are making a direct, personal claim against U.S. Bank and U.S. Bank ND.

Finally, removal and preemption here are not irreconcilable with the language in 15 U.S.C. § 1641(d) (the so-called HOEPA "assignee" provision) of the TILA statute.[11] The HOEPA "assignee" provision cannot apply to national banks when there are claims for excessive interest

---

[11]Plaintiffs' argument, that permitting removal based upon the NBA would be tantamount to allowing national banks to "launder" loans, is nonsense. If for some unknown reason contrary to *Adkison*, 2004 WL 1098941, the loans made in 1997 and 1998 are now unlawful under state law, plaintiffs can pursue the SMLA suit against FirstPlus Bank. Second, plaintiffs can always pursue any claims they might have against U.S. Bank and U.S. Bank ND for excessive interest based on federal law.

since the plaintiffs' state law claims are preempted by the NBA. Statutes must be interpreted so that they are consistent. *United Transp. Union v. Surface Transp. Bd.*, 183 F.3d 606, 612 (7th Cir. 1999) (a fundamental rule of construction is that courts should not interpret one statute that renders another superfluous). A court must read statutes so as to give effect to each if it can do so while preserving the statutes' sense and purpose. *J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred Intern., Inc.*, 534 U.S. 124, 143-44 (2001). While HOEPA might apply where a federal or state law claim or defense is *not otherwise* preempted, nothing in HOEPA states or implies that it is overruling over 100 years of federal banking laws. *Cf. Illinois Ass'n of Mortg. Brokers v. Office of Banks and Real Estate*, 308 F.3d 762, 765-66 (7th Cir. 2002) (ruling that, while HOEPA does not forbid state regulation, it does not override the possibility another federal law–the Alternative Mortgage Transaction Parity Act– contains such a prohibition); *Conference of State Bank Sup'rs v. Conover*, 710 F.2d 878 (D.C. Cir. 1983) (OCC regulations permitting national banks to make **or purchase** adjustable rate mortgages preempt state laws purporting to prohibit or limit such activity). Where, as here, complete preemption exists under federal law, *Beneficial Nat'l Bank*, 123 S. Ct. at 2064, neither the SMLA nor HOEPA repeals or renders the NBA ineffective.

### E. Recent OCC Regulations Demonstrate that Preemption is Proper.

On August 5, 2003, in connection with a preemption determination and order concerning the GFLA,[12] the OCC published a notice of proposed rulemaking in the Federal Register, 68 Fed. Reg. 46119, amending regulations to clarify the applicability of state law to national banks. On January 7, 2004, the OCC announced that the proposed regulations concerning national banks' lending

---

[12]*Preemption Order*, 68 Fed. Reg. 46264 (preempting certain provisions of state lending law, including assignee liability provision). While the *Preemption Order* dealt with the GFLA specifically, that is clearly not the intention of the proposed rule or Final Rule which must apply uniformly to all national banks.

activities were final.  69 Fed. Reg. 1904 ("Final Rules"), and became effective on or about February 7, 2004.  *See* 5 U.S.C. § 553(d).

The Final Rules do not entail any new powers for national banks or any expansion of their existing powers under the NBA.  *See* 69 Fed. Reg. at 1908.  Rather, the Final Rules ensure the soundness and efficiency of national banks' operations by making clear the standards under which they do business.  *Id.*  In short, through the Final Rules, the OCC has assembled and aggregated the extensive preemption authority that had developed piecemeal in judicial opinions and agency rulings.

Relying on 12 U.S.C. §§ 24 (Seventh), 371 and *Barnett Bank v. Nelson*, 517 U.S. 25, 31 (1996), the OCC determined that federal law vests the OCC with exclusive regulatory powers pertaining to the real estate lending activities of national banks.  *Id*. at 1909. "The language and history of 12 U.S.C. 371 confirm the real estate lending powers of national banks and that only the OCC (subject to other applicable federal law) and not the states may impose restrictions or requirements on national banks' exercise of those powers.  The Federal powers conferred by 12 U.S.C. 371 are subject *only* to section 1828(o) of this title and such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order."  *Id* at 1909. "Thus, . . . state laws that attempt to confine or restrain national banks' real estate lending activities are inconsistent with national banks' real estate lending powers under 12 U.S.C. 371," and are preempted.  *Id*.

National banks may "make, arrange, **purchase**, or sell loans or extensions of credit, or interests therein, that are secured by liens on, or interests in, real estate, subject to 12 U.S.C. 1828(o) and such restrictions and requirements as the Comptroller of the Currency may prescribe by regulation or order."  12 C.F.R. § 34.3(a) (emphasis added).  "[S]tate laws that obstruct, impair, or

condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks." 69 Fed. Reg. at 1917. The Final Rules identify the types of state law limitations that are not applicable to national banks under 12 U.S.C. § 371 in a generic fashion to avoid the impression that the regulations only cover state laws that appear on the list. *Id.* at 1911. The list of preempted state laws includes state law limitations concerning "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" and "rates of interest on loans" as defined in 12 C.F.R. § 7.4001(a) and decisions interpreting it. *Id.* at 1917, 34.4(a)(10), (12); *compare* 12 C.F.R. § 560.2(b)(10), (12) (citing examples of state laws preempted by HOLA).[13]

Because the plaintiffs' SMLA claims by their very nature impair a national bank's ability to make or purchase loans secured by real estate subject only to the terms, conditions and limitations prescribed by the OCC and Congress, and their ability to collect and receive interest thereon, this Court should hold that the NBA preempts plaintiffs' state law claims.[14]

---

[13]The preemption regulations adopted by the OCC are substantially identical to the preemption regulations of the OTS that have been applicable to federal thrifts for a number of years. *See* 12 U.S.C. § 1463(g); *Greenwood Trust Co.*, 971 F.2d 818; *Cappalli v. Nordstrom FSB*, 155 F. Supp. 2d 339, 341 (E.D. Pa. 2001). In other words, the NBA and HOLA afford national banks and federal savings associations "most favored lender" status, permitting a national bank or a federal savings association to export the laws of their home state and charge the higher rates which could be charged by any competing institution in the state in which it is located. *See, e.g., Marquette Nat'l Bank*, 439 U.S. at 311-19; *Phipps*, 2003 WL 22149646 at *4; *Cappalli*, 155 F. Supp. 2d at 341; *see also Washington Mut. Bank, FA v. Superior Court*, 95 Cal. App. 4th 606, 620 (2003). The OTS has consistently ruled that state lending laws, similar to the SMLA, are preempted by HOLA.

[14]12 U.S.C. §§ 24 (Seventh) and 371 show the expansive scheme of federal regulation of national banks in the real estate area and demonstrate that national banks are permitted by law to purchase loans. *See Wachovia Bank N.A. v. Watters*, 2004 WL 1948655 *2 (W.D. Mich. Aug. 30, 2004)(national banks authorized to "make, arrange and deal" in real estate loans); *Wachovia Bank N.A. v. Burke*, 319 F.Supp.2d 275, 286 (D. Conn. 2004). Because of these statutorily permitted purchase rights, it is equally fundamental that the NBA must protect those purchasing banks from varying state laws when plaintiffs make claims for excessive interest on the loans they buy. *Preemption Order*, 68 Fed. Reg. at 46278 (discussing preemption of GFLA provision on assignee liability as it impairs the powers of national banks). 12 U.S.C. § 24 (Seventh) and/or 12 U.S.C. § 371 are additional portions of the NBA which lend support to defendants' position that plaintiffs' state court petition is subject to removal and complete preemption. Plaintiffs' reliance on *Hancock v. Bank of America*, 272 F. Supp. 2d 608 (W.D. Ky. 2002) goes much too far and their arguments are disingenuous. While the *Hancock* court discussed that 12 U.S.C. § 24 (Seventh) did not provide a ground for removal (because the parties *agreed* the fax fees involved were not interest under § 85 and thereby covered by the *Beneficial Nat. Bank* decision or 12 C.F.R. 7.4001), it absolutely did not

**F.      The Remedy Plaintiffs Seek Reveals the True Nature of Their Claim.**

In determining jurisdiction, "the only question to be decided is whether there is any distinction between the interests sought to be vindicated by section 86 of the NBA and by the lawsuits brought by the plaintiffs." *Ament v. PNC Nat'l Bank*, 825 F. Supp. 1243, 1249 (W.D. Pa. 1992) (citation omitted), *rev'd in part*, *Spellman v. Meridian Bank*, 1995 WL 764548 (3d Cir. 1995). That is, the Court should focus on the remedy sought as a means of discerning the true nature of plaintiffs' claims.

In *Nelson*, *supra*,  the plaintiffs attempted to argue that *Nahas* "does not control the case at bar because the central issue presented by plaintiffs' claims is not whether defendants charged a usurious rate of interest, but whether the defendants violated [Minnesota statutory law] by charging late and overlimit fees."  794 F. Supp. at 316.  The *Nelson* court correctly looked past plaintiffs' ruse, ruling that the "issue is not what theories plaintiffs name in their complaints [but] whether plaintiffs seek a remedy for usurious interest paid."  *Id*.  Applying these principles the court concluded that "[b]ecause at the time of removal plaintiffs sought a remedy for usurious interest paid, their complaints raise claims that are necessarily federal in nature and were therefore properly removed under *M. Nahas*."  *Id*.  The same is true here.

While plaintiffs do not specifically label the remedies they seek as relief for usurious charges, it is, nevertheless, the remedy they actually seek.  In their petition (pp. 37-39 and 45-46), plaintiffs ask for the following forms of relief:  An injunction forbidding the charging or receipt of any future *interest*; a refund of all *interest* and fees paid on their loans; fees and costs for prosecuting this action.  Similarly, the Missouri penalty for usury, as prescribed in R.S.Mo. § 408.060, provides the

---

make any such determinations concerning § 371 or with respect to the same types of fees as involved here.  Nor does it appear in the opinion that § 371 was even argued as a ground for removal or preemption.

1613900.1

following relief: An order forbidding the collection of future interest in excess of the legal limits; excess interest charges are to be applied to the underlying debt (*i.e.*, another way of refunding usury paid); fees and costs for prosecuting the action.

Whatever plaintiffs may call their action, the remedy they seek clearly identifies their claim as one for usury, *i.e.*, the recovery of excessive interest. There is no distinction between the relief plaintiffs seek under state law and the relief available under the NBA. Any forfeiture of interest collected by a national bank can **only** be obtained by resort to the NBA. "Given the expansive definition traditionally accorded the term 'interest' under the NBA, and that Plaintiffs' Complaints seek recovery for charges related to the extension of credit by national banks, this court finds that sections 85 and 86 of the NBA subsume the interests for which Plaintiffs seek vindication under state law." [15] *Goehl v. Mellon Bank*, 825 F. Supp. 1239, 1242-43 (E.D. Pa. 1993), *rev'd in part*, *Spellman v. Meridian Bank*, 1995 WL 764548 (3d Cir. 1995); *see also Beneficial Nat'l Bank*, 123 S. Ct. at 2064. It is the exclusivity of the remedy that is the critical factor here.

### G. Plaintiffs' Request for Attorneys' Fees is Without Merit.

Plaintiffs' request for attorneys' fees and costs could not be more wanting in merit. First, plaintiffs fail to even mention the final result in *Adkison* holding that the SMLA does not apply to loans made by FirstPlus Bank in light of the DIDA lending authority. Second, plaintiffs fail to point out that they have lost this issue in other federal cases, which have held removals were made in

---

[15] Plaintiffs have openly admitted in related state court litigation that they seek to recover overcharged interest under the SMLA, actually comparing their SMLA claim to one for usury. (Exhibit 10, excerpt of plaintiffs' opposition to dismissal motion of assignee defendants.) Emphasizing that "an express remedy" under the SMLA means the party is barred from collection of any interest on the loan, plaintiffs argue that, "by continuing to collect interest on these loans despite the fact that they violate the SMLA, a further violation occurs each month. This fact furthers the idea that the accrual of usury claims should likewise guide the determination of when an SMLA claim accrues." Plaintiffs could not be more clear about their intentions.

"good faith."[16]  Third, they reference cases in which NBA preemption was not even an issue nor in which U.S. Bank and U.S. Bank ND was a party.  Fourth, they totally ignore the recent intervention of two controlling cases–*Beneficial Nat'l Bank* and *Phipps*.  Judge Fenner's well-reasoned *Phipps* decision (after *Beneficial*) makes clear that the plaintiffs' claim is in fact one of "usury," or a case in respect of fees incurred for the extension of credit, and thus is a case solely cognizable under the NBA when pursued against a national bank.  Removal is proper, and plaintiffs' motion to remand should be denied.  The Court need never reach the issue of plaintiffs' attorneys' fees.

## III.  CONCLUSION

For all these reasons, this Court should deny plaintiffs' motion to remand.

Respectfully submitted,

/s/ Mark A. Olthoff
MARK A. OLTHOFF            #38572
LOGAN W. OVERMAN          #55002
SHUGHART THOMSON & KILROY, P.C.
Twelve Wyandotte Plaza
120 W. 12th Street
Kansas City, Missouri  64105
(816) 421-3355
(816) 374-0509 (FAX)

---

[16]*See Baker v. Century Fin. Group, Inc.*, No. 01-0903-CV-W-SOW-ECF, slip op. at 2 (W.D. Mo. Nov. 19, 2001) (rejecting plaintiff's request for attorneys' fees because defendants "removed this case in good faith as their briefs attempt to demonstrate that the plaintiffs do not have a cause of action under Missouri law and are actually relying on the federal statute.") (Attached as Exhibit 11); *Beaver v. U.S. Bank, N.A.*, No. 01-0989-CV-W-5, slip op. at 2 (W.D. Mo. Nov. 6, 2001) (because "the Defendants have attempted to demonstrate that the Plaintiffs do not have a cause of action under Missouri law . . . [t]he Court therefore believes that Defendants attempted to remove this case in good faith.  Thus, the Court will exercise its discretion not to award fees and costs in this matter.") (Attached as Exhibit 12).

24

RICHARD B. SOLUM
DORSEY & WHITNEY LLP
50 S. 6th Street
Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2600
(612) 340-2643 (FAX)

ATTORNEYS FOR DEFENDANTS
U.S. BANK NATIONAL ASSOCIATION;
U.S. BANK NATIONAL ASSOCIATION
ND; FIRSTPLUS HOME LOAN
TRUST 1996-2, FIRSTPLUS HOME
LOAN OWNER TRUSTS 1996-3, 1996-4,
1997-1, 1997-2, 1997-3, 1997-4, 1998-1,
1998-2, 1998-3, 1998-4, 1998-5 AND
WILMINGTON TRUST COMPANY

/s/ Mark A. Olthoff
MARK A. OLTHOFF          #38572
LOGAN W. OVERMAN         #55002
SHUGHART THOMSON & KILROY, P.C.
Twelve Wyandotte Plaza
120 W. 12th Street
Kansas City, Missouri 64105
(816) 421-3355
(816) 374-0509 (FAX)

ATTORNEYS FOR DEFENDANT
NORWEST HOME IMPROVEMENT,
INC.

/s/ Mark A. Olthoff
MARK A. OLTHOFF          #38572
LOGAN W. OVERMAN         #55002
SHUGHART THOMSON & KILROY, P.C.
Twelve Wyandotte Plaza
120 W. 12th Street
Kansas City, Missouri 64105
(816) 421-3355
(816) 374-0509 (FAX)

25

THOMAS M. HEFFERON
GOODWIN PROCTOR LLP
1717 Pennsylvania Avenue NW
Suite 500
Washington, DC 20006

ATTORNEYS FOR DEFENDANT
COUNTRYWIDE HOME LOANS, INC.

/s/ Daniel L. McClain
RANDOLPH G. WILLIS          #47834
DANIEL L. McCLAIN           #43441
RASMUSSEN, WILLIS, DICKEY &
MOORE, LLC
9200 Ward Parkway, Suite 310
Kansas City, Missouri 64114
(816) 960-1611
(816) 960-1669 (FAX)

THOMAS L. ALLEN
ROY W. ARNOLD
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, Pennsylvania 15219
(412) 288-3131
(412) 288-3063 (FAX)

ATTORNEYS FOR DEFENDANTS
SOVEREIGN BANK AND RESIDENTIAL
FUNDING CORPORATION.

/s/ Daniel L. McClain
RANDOLPH G. WILLIS          #47834
DANIEL L. McCLAIN           #43441
RASMUSSEN, WILLIS, DICKEY & MOORE, LLC
9200 Ward Parkway, Suite 310
Kansas City, Missouri 64114
(816) 960-1611
(816) 960-1669 (FAX)

26

SHELDON T. ZENNER
DAVID STAGMAN
KATTEN MUCHIN ZAVIS ROSENMAN
525 West Monroe Street, Suite 1600
Chicago, IL 60661-3693

ATTORNEYS FOR DEFENDANT UBS
WARBURG REAL ESTATE SECURITIES
INC., IMPROPERLY NAMED AS PAINE
WEBBER REAL ESTATE SECURITIES,
INC.

/s/ Daniel L. McClain
RANDOLPH G. WILLIS          #47834
DANIEL L. McCLAIN           #43441
RASMUSSEN, WILLIS, DICKEY & MOORE, LLC
9200 Ward Parkway, Suite 310
Kansas City, Missouri 64114
(816) 960-1611
(816) 960-1669 (FAX)

ATTORNEYS FOR DEFENDANTS PSB
LENDING CORP. AND BANC ONE
FINANCIAL SERVICES, INC.

/s/ Scott Martin
SCOTT MARTIN                #42370
MICHAEL S. HARGENS          #51077
HUSCH & EPPENBERGER, L.L.C.
1200 Main Street, Suite 1700
Kansas City, Missouri 64105

ATTORNEY FOR DEFENDANTS
GOLETA NATIONAL BANK AND CIT
GROUP.

/s/ Scott Martin
SCOTT MARTIN                #42370
MICHAEL S. HARGENS          #51077
HUSCH & EPPENBERGER, L.L.C.
1200 Main Street, Suite 1700
Kansas City, Missouri 64105

27

DAVID STURGEON-GARCIA
The Law Offices of David Sturgeon-Garcia
91 Devin Drive
Moraga, California  94556

ATTORNEYS FOR DEFENDANT
MASTER FINANCIAL, INC.

/s/ Todd Ruskamp
TODD RUSKAMP                    #38625
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Blvd.
Kansas City, Missouri  64108

ATTORNEY FOR DEFENDANT
HOUSEHOLD FINANCE
CORPORATION

/s/ Gregory T. Wolf
GREGORY T. WOLF                 #43717
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Blvd.
Kansas City, Missouri  64108

MICHAEL J. CERESETO
KALLEY R. AMAN
BUCHALTER, NEMER, FIELDS & YOUNGER, P.C.
601 So. Figueroa, Suite 2400
Los Angeles, California  90017

ATTORNEYS FOR DEFENDANT PFF
BANK & TRUST

/s/  Jennifer A. Donnelli
JENNIFER A. DONNELLI            #47755
BRYAN CAVE, LLP
1200 Main Street, Suite 3500
Kansas City, Missouri  64105

ATTORNEY FOR DEFENDANT THE
ASSOCIATES

/s/ Leslie A. Greathouse
LESLIE A. GREATHOUSE          #48431
KUTAK ROCK, LLP
200 Valencia Place
444 West 47th Street
Kansas City, Missouri  64112

ATTORNEY FOR DEFENDANTS ACE
SECURITIES CORPORATION HOME
LOAN TRUST 1999-A AND GERMAN
AMERICAN CAPITAL CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document was filed electronically with the above-captioned court, with notice of case activity to be generated and sent electronically by the Clerk of said court (with a copy to be mailed to any individuals who do not receive electronic notice from the Clerk) this 22nd day of October, 2004, to:

Kip D. Richards, Esq.
J. Michael Vaughan, Esq.
David M. Skeens, Esq.
Walters, Bender, Strohbehn & Vaughan, PC
2500 City Center Square
12th and Baltimore
P.O. Box 26188
Kansas City, MO  64196

Eric G. Calhoun, Esq.
Lawson, Fields, McCue, Lee & Campbell, P.C.
14135 Midway Road
Suite 250
Addison, TX  75001

ATTORNEYS FOR PLAINTIFFS

/s/ Mark A. Olthoff
Attorney for Defendants U.S. Bank National
Association and U.S. Bank National
Association ND

29